513 S.E.2d 98

**The STATE, Respondent,**

v.

**Sterling Barnett SPANN, Appellant.**

**No. 24902.**

Supreme Court of South Carolina.

Heard Sept. 23, 1998.
Decided Feb. 16, 1999.
Rehearing Denied March 19, 1999.

John H. Blume, of Cornell Law School, of Ithaca, New York; Diana L. Holt, of Georgia Resource Center, of Atlanta, Georgia; and Pamela A. Wilkins, of Columbia, for appellant.

Attorney General Charles M. Condon, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Lauri J. Soles, all of Columbia, for respondent.

FINNEY, Chief Justice:

This is an appeal from the denial of a new trial motion based upon after-discovered evidence. We find the trial judge erred in finding certain expert evidence could have been discovered by the exercise of due diligence, and reverse and remand for a new trial.

■ Appellant was convicted of the 1981 sexual assault, robbery, and murder of Melva Neill, as well as the burglary of her home, and received a death sentence. *See State v. Spann*, 279 S.C. 399, 308 S.E.2d 518 (1983). In order to prevail in this new trial motion, appellant must show the after-discovered evidence:

(1) is such that it would probably change the result if a new trial were granted;

(2) has been discovered since the trial;

(3) could not in the exercise of due diligence have been discovered prior to the trial;

(4) is material; and

(5) is not merely cumulative or impeaching.

*State v. Prince,* 316 S.C. 57, 447 S.E.2d 177 (1993).

Appellant presented both expert and lay testimony in support of his motion. The circuit court judge held the expert evidence failed the due diligence prong of the test. He denied the new trial motion as to the lay evidence, holding that some of that evidence was merely impeaching, and some was simply not credible. We reverse the order as it relates to the expert testimony and the due diligence issue. Since reversal on this ground entitles appellant to a new trial, we need not address his remaining issues.

In order to understand the after-discovered evidence, it is necessary to review certain events which occurred within a twelve mile radius in York County between July and November 1981. On July 18, 1981, the body of Mary Ring was discovered in the bathtub of her home. Ms. Ring was a heavy-set white woman, fifty-seven years old, who had been beaten about the head, sexually assaulted, and strangled to death. Her nude body was found in her partially filled tub. Approximately two months later, the nude body of eighty-one year old Melva Neill was found in the bathtub of her home. Ms. Neill had been beaten around the face and chest, had been brutally sexually assaulted, and strangled, her body then placed in the partially filled tub. Ms. Neill was a heavy-set white woman.

On November 16, 1981, the mostly nude body of Bessie Alexander was found on her dining room floor. Ms. Alexander had been injured on her face and neck, and there were bruises on other parts of her body. She too had been sexually assaulted, and then strangled. Ms. Alexander was a heavy-set white woman who, like Ms. Ring and Ms. Neill, was living alone. Ms. Alexander's bathtub was inaccessible from her home's interior, but her body had been drenched in liquids, including fruit juice.

Ms. Ring's killer was never found. Appellant was arrested for the murder of Ms. Neill on September 18, 1981, and subsequently convicted. Johnny Hullett was convicted of the crimes against Ms. Alexander, committed approximately two months after appellant was jailed. At the time of the Alexan-

der murder, investigating officers said in a published newspaper story that they perceived no connection between the three murders. The local pathologist who performed two of the three autopsies and was present at the third did not recognize any pattern in 1981. The pathologist testified at appellant's new trial hearing that although he still felt there were significant differences between the deaths, he acknowledged that, upon reflection, the similarities were "scary."

At the new trial hearing appellant presented the testimony of three expert witnesses: a forensic pathologist (Dr. Spitz); a forensic psychiatrist (Dr. Tanay); and an expert in crime scene analysis and criminal personality profiling (Mr. Ressler). Dr. Spitz testified that all three women were strangled in a unique way, a method he had never before observed in forty-three years of practice. He testified to other factual similarities between the crimes, and opined that one perpetrator was responsible for all three murders. Dr. Tanay testified the three murders were committed by a single individual, a sexual sadistic murderer. He testified to the psychiatric characteristics of these types of killers, and opined based upon his examination of appellant that it was "impossible" that appellant had committed these offenses. Dr. Tanay also testified that sexual sadistic killers are almost always psychiatrically disturbed white males. Appellant is a black man with no history of psychiatric problems; Johnny Hullett is a white male with a long psychiatric history. Finally, Mr. Ressler profiled the killer of these three women as a white male in his mid–20's to mid–30's with a history of mental illness, who was either single or had a dysfunctional marriage, a person with bizarre fantasies, a history of childhood abuse, and knowledge of the area. Appellant does not fit this profile.

■ The circuit court judge found the expert testimony "thought-provoking" and "intriguing", and specifically found that Mr. Ressler's testimony "raise[d] a reasonable inference as to [appellant's] innocence." The judge rejected the testimony of all three experts as grounds for the granting of a new trial, however, finding the evidence and science upon which their opinions were based was all in existence at the time of appellant's trial, and thus could have been discovered by his attorneys with the exercise of due diligence. We disagree. In order for the attorneys to have pursued these types of ex-

perts, they would first have needed to recognize the similarities between the crimes, similarities not apparent at the time even to the experts (i.e. law enforcement investigators and the pathologist) involved in all three cases. We hold that the due diligence standard imposed upon trial attorneys cannot fairly be said to be this high.

We find the circuit court judge committed an error of law, under the unusual facts of this case, in holding the newly discovered expert evidence could have been discovered by the exercise of due diligence. *State v. Prince, supra; State v. Parker,* 249 S.C. 139, 153 S.E.2d 183 (1967). Accordingly, we reverse and remand for a new trial.

**REVERSED AND REMANDED.**

TOAL, MOORE, WALLER and BURNETT, JJ., concur.